**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 24 2003**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellant,

v.

GARY LIONELL BOLDEN,

Defendant - Appellee.

No. 02-6249

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D. Ct. No. CR-99-59-A)**

---

Arlene Joplin, Assistant United States Attorney (Robert G. McCampbell, United States Attorney, and Sue Tuck Richmond, Assistant United States Attorney, with her on the briefs), Office of the United States Attorney, Oklahoma City, Oklahoma, appearing for Appellant.

Paul Antonio Lacy, Assistant Federal Public Defender, Office of the Public Defender, Oklahoma City, Oklahoma, appearing for Appellee.

---

Before **TACHA**, Chief Circuit Judge, **BRORBY**, Senior Circuit Judge, and **TYMKOVICH**, Circuit Judge.

---

**TACHA**, Chief Circuit Judge.

---

On July 10, 2002, the United States District Court for the Western District

of Oklahoma disqualified the entire office of the United States Attorney for the Western District of Oklahoma ("USA") from representing the government on Defendant Gary Lionel Bolden's motion to compel. The USA's office immediately appealed the disqualification. Pursuant to the collateral order doctrine under 28 U.S.C. § 1291, we take jurisdiction and REVERSE.

## I. Background

On May 5, 1999, a grand jury indicted Mr. Bolden on seven drug-related counts. On July 19, 1999, he entered into a plea agreement in which he pleaded guilty to one count in exchange for the government dismissing the remaining charges. The agreement stated that the government, "in its sole discretion and by whatever means it deems appropriate, [would] evaluate Bolden's cooperation in determining whether a motion for downward departure under § 5K1.1 of the Sentencing Guidelines or a reduction of sentence under Rule 35(b), Federal Rules of Criminal Procedure is appropriate." It further stated that "the decision to make such a motion is likewise solely within the discretion of the United States, and that a negative decision will not allow a guilty plea to be withdrawn." The district court sentenced Mr. Bolden on November 9, 2000.

In December 2001, Mr. Bolden sent a letter to the USA's office, requesting that the government seek a reduction of his sentence. Assistant United States Attorney Jay Farber notified Mr. Bolden's counsel that the downward departure

committee had elected not to seek a reduction of Mr. Bolden's sentence. An exchange of letters between Mr. Bolden's counsel and the USA's office followed.

On June 14, 2002, Mr. Bolden moved to compel the government to file a motion for reduction of sentence, alleging multiple instances of bad faith on the part of the government. The government filed a motion for extension of time to respond. The district court denied the request and entered an order sua sponte directing the government to respond to the question, "In view of Mr. Bolden's allegation, should the government's representation with regard to defendant's motion be provided by a United States Attorney from another judicial district?" Mr. Bolden then filed a motion to recuse the USA's office.

On July 10, 2002, the district court entered an order disqualifying the entire USA's office, directing it to arrange for an Assistant United States Attorney ("AUSA") from another district to respond to the original motion to compel, and ordering that the response could not simply reiterate AUSA Farber's earlier response. This appeal followed.

## II. Discussion

A. Jurisdiction

"Section 1291 of Title 28 of the United States Code grants the courts of appeals . . . jurisdiction of appeals from all *final decisions* of the district courts." *Forney v. Apfel*, 524 U.S. 266, 269 (1998) (quoting 28 U.S.C. § 1291) (internal

citations omitted).  A decision is "not final, ordinarily, unless it ends the litigation on the merits and leaves nothing for the court to do but execute judgment."  *See Cunningham v. Hamilton County, Ohio*, 527 U.S. 198, 204 (1999) (internal quotations omitted).  Thus, "[t]he law normally requires a defendant to wait until the end of the trial to obtain appellate review of a pretrial order."  *Sell v. United States*, ___ U.S. ___, 123 S. Ct. 2174, 2182 (2003).

The Supreme Court has, however, "interpreted the term 'final decision' in § 1291 to permit jurisdiction over appeals from a small category of orders that do not terminate" a case.  *Cunningham*, 527 U.S. at 204.  For a district court order to fall within the narrow confines of the collateral order doctrine, it must "(1) conclusively determine[] the disputed question, (2) resolve[] an important issue completely separate from the merits of the action, and (3) [be] effectively unreviewable on appeal from a final judgment."  *Sell*, 123 S. Ct. at 2182.

The Supreme Court "ha[s] strictly applied this test when parties pursued immediate appeal of trial court rulings on motions to disqualify counsel."  *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 431 (1985).  The Court has held that neither a plaintiff nor a defendant in a civil case may immediately appeal a disqualification order.  *Koller*, 472 U.S. at 431 (plaintiff); *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 370 (1981) (defendant).  Similarly, the Court has held that a criminal defendant may not immediately appeal a pretrial

-4-

order disqualifying his counsel. *Flanagan v. United States*, 465 U.S. 259, 260 (1984). The Court has yet to consider the immediate appealability of an order disqualifying an individual prosecutor or an entire United States Attorney's office.

In conducting our analysis, we are mindful that "[i]n fashioning a rule of appealability under § 1291 . . . we [must] look to categories of cases, not to particular injustices." *Van Cauwenberghe v. Baird*, 486 U.S. 517, 529 (1988); *see also Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994) ("[T]he issue of appealability under § 1291 is to be determined for the entire category to which a claim belongs, without regard to the chance that the litigation at hand might be speeded, or a 'particular injustic[e]' averted by a prompt appellate court decision.") (citation omitted)*; United States v. McVeigh*, 106 F.3d 325, 332 n.6 (10th Cir. 1997) (noting that courts must decide the appealability of orders as a class, not based on the distinctive circumstances of each case). Thus, we address whether the government may immediately appeal an order disqualifying an entire United States Attorney's office from post-conviction proceedings.[1] This issue is a matter of first impression for our court.

---

[1] We acknowledge that disqualifying an entire United States Attorney's office differs materially from disqualifying an individual prosecutor for purposes of the collateral order doctrine. Accordingly, this opinion does not address whether the government may immediately appeal an order disqualifying one or

(continued...)

*1.  Conclusively Determines The Disputed Issue*

We must first determine whether the disqualification order conclusively determines the disputed issue.  *United States v. Deters*, 143 F.3d 577, 581 (10th Cir. 1998).  We look to the challenged order itself and the entire record to determine if the district court's order conclusively settles the disputed issue.  *Id.* (looking to the record to determine whether the order conclusively settled a matter); *see also Pindus v. Fleming Co., Inc.*, 146 F.3d 1224, 1226 (10th Cir. 1998) (looking to the plain language of an order to determine its finality).

A review of the record in this case makes clear that the district court does not intend to revisit its disqualification decision and that its order prohibits the USA's office from representing the government in all matters related to Mr. Bolden's motion.  We thus find that the disqualification order conclusively determines that the USA's office may not represent the government in Mr. Bolden's effort to force the government to file a request for a reduction of sentence.

We find Mr. Bolden's objections on this point unpersuasive.  Mr. Bolden argues that the order is not conclusive because it does not prohibit the USA's office from participating in "the future," although he does not identify what future

---

[1](...continued)
more prosecuting attorneys.

-6-

events he envisions. The disqualification order states that it disqualifies the USA's office from representing the government on the motion to compel. We read this to include all matters relating to the motion to compel. We therefore reject Mr. Bolden's argument that the order is not conclusive because the USA's office may participate in some undefined future event unconnected to the current dispute.

### 2. An Important Issue Separate From The Merits Of The Underlying Action

We next consider whether the order (1) resolves an important issue (2) that is completely separate from the merits. *Deters*, 143 F.3d at 581. Disqualifying the entire USA's office from representing the government raises important separation of powers issues. *United States v. Silva-Rosa*, 275 F.3d 18, 22 (1st Cir. 2001) (finding that disqualification of government attorneys can "trigger weighty separation of powers concerns"). These concerns are undoubtedly jurisprudentially important. *United States v. Whittaker*, 268 F.3d 185, 192 (3d Cir. 2001) (finding that an order disqualifying a United States Attorney's office from a criminal prosecution is "a jurisprudentially important issue"). Mr. Bolden admits as much in his brief.

In judging separability, we consider whether such disqualification orders are so "enmeshed in the factual and legal issues comprising" the underlying action, *see Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 (1978) (internal

-7-

quotation marks omitted), that interlocutory review will force an appellate court to consider the same or similar issues more than once, *Johnson v. Jones*, 515 U.S. 304, 311 (1995). We conclude that, on the whole, orders disqualifying an entire United States Attorney's office are separate from the underlying issues.

In reaching this conclusion, we are strongly influenced by the fact that we can only rarely—if ever—imagine a scenario in which a district court could properly disqualify an entire United States Attorney's office. Indeed, "[t]he disqualification of Government counsel is a drastic measure[,]" *Bullock v. Carver*, 910 F. Supp. 551, 559 (D. Utah 1995) (citing cases), and even "where it is shown that an Assistant United States Attorney is subject to a conflict of interest, the proper remedy [generally] is to remove that individual, not all of the attorneys in the district, from the case[,]" *Crocker v. Durkin*, 159 F. Supp. 2d 1258, 1284-85 (D. Kan. 2001). Thus, because disqualifying an entire United States Attorney's office is almost always reversible error regardless of the underlying merits of the case, a reviewing court will rarely have to delve into the underlying claim to conclude that the disqualification was unwarranted.

The Supreme Court's rulings in *Flanagan* and *Koller*, which held respectively that a civil plaintiff and a criminal defendant may not challenge disqualification orders on interlocutory appeal, are inapposite. Here, the district court disqualified the prosecutor—indeed the entire USA's office. Such an order

implicates separation of powers concerns that were not at issue in *Flanagan* and *Koller*. *See Whittaker*, 268 F.3d at 196 n.6 (noting separation of powers concerns in disqualifying an entire United States Attorney's office, but reversing the disqualification on other grounds).

Further, the unique nature of the separation of powers concerns that are relevant to this appeal renders the prejudice-related separability concerns of *Flanagan* and *Koller* inapplicable. The *Flanagan* and *Koller* Courts held that the parties could not immediately appeal their disqualification orders, in part, because a court could not determine the propriety of the order without considering whether the parties suffered prejudice, which requires consideration of the underlying merits of the case. *See Flanagan*, 465 U.S. at 268-69 (finding that the disqualification appeal and the underlying dispute were intertwined); *Koller*, 472 U.S. at 439 (finding that an order disqualifying individual attorneys in a civil case was not directly appealable, in part, because such a review would likely require an examination of the merits of the underlying litigation). In contrast, the current appeal—and most appeals from the disqualification of an entire United States Attorney's office—will raise separation of powers injuries that will allow a court to evaluate the order without reaching the issue of prejudice.

Despite these considerations, Mr. Bolden urges us to find that, in this case, "the issue of the government's representation is inextricably intertwined and

entangled in the merits of Mr. Bolden's claims." This argument, however, overlooks that the Court has "consistently eschewed a case-by-case approach to deciding whether an order is sufficiently collateral." *Cunningham*, 527 U.S. at 206. Every appeal that has considered the disqualification of an entire United States Attorney's office has found the disqualification issue to be entirely separate from the merits of the underlying case. *See Whittaker*, 268 F.3d at 192 ("the [disqualification] order unquestionably resolves a jurisprudentially important issue completely separate from the merits of the dispute concerning whether Whittaker committed mail fraud"); *United States v. Vlahos*, 33 F.3d 758, 761 (7th Cir. 1994) (holding that the disqualification order is "an issue completely independent of the merits of the action"); *United States v. Caggiano*, 660 F.2d 184 (6th Cir. 1981) (finding that the disqualification order "was separable from, and collateral to the merits of the main proceeding") (internal quotations omitted). Thus, even if the issues in the underlying dispute in this case were to overlap with the disqualification order, an issue we do not reach today, we find that on the whole such orders would satisfy the separability requirement.

   3.   *Effectively Unreviewable On Appeal From A Final Order*

Finally, we must consider whether such disqualification orders are "effectively unreviewable on appeal from final judgment." *Coopers & Lybrand*, 437 U.S. at 468. An order is effectively unreviewable on appeal "where the order

-10-

at issue involves 'an asserted right the legal and practical value of which would be destroyed if it were not vindicated before trial.'" *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 799 (1989) (quoting *United States v. MacDonald*, 435 U.S. 850, 860 (1978)).

Applying this standard in most criminal litigation leads to the conclusion that the government cannot effectively vindicate its rights on appeal after a final judgment. If it loses at trial, the Double Jeopardy Clause will likely prohibit review. *See, e.g., Montoya v. New Mexico*, 55 F.3d 1496, 1498 (10th Cir. 1995). If the government prevails at trial, it will generally lack standing as a prevailing party to appeal the decision. *See, e.g., Jarvis v. Noble/Sysco Food Serv. Co.*, 985 F.2d 1419, 1424 (10th Cir. 1993) (stating that "it is the general rule that a party cannot appeal from a judgment in his favor"). The government asks us to find that the same holds true in this case.

The government's argument, however, overlooks the fact that the current dispute does not implicate the Double Jeopardy Clause. That clause "provides three separate protections for criminal defendants: against prosecution for the same offense after an acquittal, against prosecution for the same offense after a conviction, and against multiple punishments for the same offense." *Montoya*, 55 F.3d at 1498. Because the current action is not a true criminal proceeding, but merely a dispute over whether the government has honored its obligations under

-11-

the plea agreement, this matter does not implicate any of the protections provided by the Double Jeopardy Clause. Therefore, the government's argument on this matter is unpersuasive.

Nevertheless, we find that an appeal following an adverse ruling on the merits would not effectively vindicate the alleged harm. On this point, the government argues that the true harm from disqualification is grounded in separation of powers. It points out that Congress has mandated that the United States Attorney for each district represent the government in all cases occurring within that district. *See* 28 U.S.C. § 547. Further, although not noted by the government, the Constitution grants the Executive the power to "take care that the laws are faithfully executed." U.S. Const. art. II, § 3. Although caselaw is admittedly vague on the exact scope of this power, it is clear that this constitutional provision vests the Executive with substantial discretion in choosing when and how to prosecute cases. *See, e.g.*, *United States v. Andersen*, 940 F.2d 593, 596 (10th Cir. 1991) (holding that the Constitution vests prosecutors with significant discretion in choosing when and how to prosecute); *United States v. Cox*, 342 F.2d 167, 171 (5th Cir. 1965) (en banc) ("It follows, as an incident of the constitutional separation of powers, that the courts are not to interfere with the free exercise of the discretionary powers of the attorneys of the United States in their control over criminal prosecutions."); *Matter of Grand Jury*

*Subpoena of Rochon*, 873 F.2d 170, 174 (7th Cir. 1989) ("As a threshold matter, a court may not exercise any supervisory power [over the Executive] absent a clear basis in fact and law for doing so . . . . A federal court that imposes sanctions on executive conduct that is otherwise permitted by the Constitution, a federal statute or a rule will most likely be invading the executive sphere . . . .") (internal quotations omitted).

Because the alleged injury is grounded in separation of powers, we find that appellate vindication would not effectively remedy the alleged harm. In doing so, we have fully considered the teachings of *Flanagan*, but find them inapposite. In *Flanagan*, the Supreme Court rejected interlocutory appellate review, in part, because it found that the defendant could obtain effective post-trial relief from the improper disqualification of his counsel because post-trial reinstatement of his counsel would remedy any injury he suffered. *Flanagan*, 465 U.S. at 267-68.

In this case, however, no post-trial relief exists that could remedy the alleged separation of powers injury that would be incurred through wrongful disqualification of the entire USA's office. The separation of powers doctrine, which acts as a "safeguard against the encroachment or aggrandizement of one branch at the expense of the other," *Buckley v. Valeo*, 424 U.S. 1, 122 (1976), confers on each branch "the ability . . . to be vigorous in asserting its proper authority[,]" *Clinton v. City of New York*, 524 U.S. 417, 452 (1998) (Kennedy, J.

-13-

concurring). The interests protected by the doctrine simply will not abate during the possibly lengthy resolution of this matter, and appellate vindication cannot undo such an invasion of Executive authority. Therefore, mindful of the fact that "[l]iberty is always at stake when one or more branches seek to transgress the separation of powers[,]" *id.*, we conclude the USA's office may immediately appeal the disqualification order. [2]

B.    Merits

Having established jurisdiction to hear this appeal, we now consider whether the district court erred by disqualifying the entire USA's office. Like the jurisdictional issue, this is a matter of first impression for our court.

We review attorney disqualification orders under a bifurcated standard of review. First, we review the district court's factual conclusions under a clear error standard. *United States v. Collins*, 920 F.2d 619, 628 (10th Cir. 1990). Second, we review the district court's legal interpretation of particular ethical norms under a de novo standard when that interpretation implicates important constitutional rights. *Id.* (applying de novo review when disqualification

---

[2] Because we find that we have jurisdiction to hear this appeal under the collateral order doctrine,    we do not reach the government's mandamus argument,. *See In re Kozensky* , 236 F.3d 615, 618 (10th Cir. 2000) (If a "court has before it both an appeal and a petition for mandamus, as in this case, and the order is properly reviewable by way of appeal, the court must review the [order] through appeal rather than mandamus.").

implicates the Sixth Amendment right to counsel). De novo review is especially appropriate "in disqualification cases . . . where the facts are not in dispute, [because] district courts enjoy no particular functional advantage over appellate courts in their formulation and application of ethical norms." *Id.* (internal citations omitted). Thus, because the current disqualification order implicates important constitutional principles and the district court did not base its order on highly disputed facts, we review the order under the de novo standard of review. *See id.*

"The disqualification of Government counsel is a drastic measure and a court should hesitate to impose it except where necessary." *Bullock*, 910 F. Supp. at 559. Courts have allowed disqualification of government counsel in limited circumstances. *See, e.g., Young v. United States*, 481 U.S. 787, 807 (1987) (actual conflict of interest because appointed prosecutor also represented another party); *United States v. Heldt*, 668 F.2d 1238, 1275 (D.C. Cir. 1981) (bona fide allegations of bad faith performance of official duties by government counsel in a civil case); *United States v. Prantil*, 764 F.2d 548, 552-53 (9th Cir. 1985) (prosecutor who will act as a witness at trial). Further, because disqualifying government attorneys implicates separation of powers issues, the generally accepted remedy is to disqualify "a specific Assistant United States Attorney . . . , not all the attorneys in" the office. *Crocker*, 159 F. Supp. 2d at 1284. In light of

these principles, every circuit court that has considered the disqualification of an entire United States Attorney's office has reversed the disqualification. *See Whittaker*, 268 F.3d 185 (3d Cir. 2001); *Vlahos*, 33 F.3d 758 (7th Cir. 1994); *Caggiano*, 660 F.2d 184 (6th Cir. 1981).

Noting these important principles, we reverse the disqualification order for several reasons. First, the district court wrote an extremely short disqualification order, containing a paucity of facts to indicate either misconduct in the representation or any alleged conflicts of interest on the part of the *entire* USA's office. *Cf. Collins*, 920 F.2d at 628 (requiring the district court to make substantial findings on the record to justify disqualification of defense counsel). Indeed, the order itself discounts several probable bases for disqualifying even individual attorneys in the office. It reads, "[R]egardless of whether [AUSA] Farber may become a witness or may have an actual conflict of interest, the Court finds that the government's response to Mr. Bolden's motion to compel should be prepared by counsel from another United States Attorney's office" to preserve objectivity. Thus, rather than extensively analyzing any alleged misconduct in the representation or conflicts of interest on the part of the entire USA's office, the district court merely concluded that the USA's office was "too close to the case to

advocate effectively the government's position."[3]  Finally, the district court did

not indicate that it even considered the separation of powers concerns implicated

by the disqualification order.

Further, to support the disqualification, the district court cited *United*

*States v. Berger*, 251 F.3d 894, 907 (10th Cir. 2001), out of context.  When read

in full, it does not support the disqualification:

> During oral arguments in this case, the panel asked counsel whether it was appropriate for attorneys who had testified as witnesses in the district court to argue the case on appeal. This concern was raised in light of standards such as Rule 3.7 of the Rules of Professional Conduct, adopted by the Oklahoma Supreme Court. *See* 5 O.S. 2000, Ch. 1, App. 3-A . . . . Although the rule thus does not appear to bar counsel's representation in the instant appeal, we note the dual roles of the attorneys in this case have made the determination of the appeal more difficult . . . . *In such circumstances, we think attorneys should consider whether it would be wiser to have different counsel handle the appeal, so as to keep separate the roles of attorney and witness, to preserve the ability of counsel to remain objective, and to avoid any potential conflict of interest between the attorney and the client.  Id.* at 906-07 (emphasis added).

Reading *Berger* in context makes clear that its *suggestion*—that attorneys should

---

[3]  From reading this statement, it appears that the district court disqualified the USA's office, at least in part, because it believed that the office would not provide effective counsel for the government.  This concern seems misplaced. First, we can presume that, in most cases, the Executive is in a better position than a judge to decide who can best represent its position.  Second, even if the USA's office did not effectively represent the government, we cannot see how that would harm Mr. Bolden.  Presumably, if the USA's office is an ineffective advocate, Mr. Bolden will obtain his desired relief.  Thus, at least in this case, such concern for the government by the district court is misplaced.

consider potential conflicts caused by possible violations of specific ethical rules—does not support dismissing the entire USA's office without basing this action on clearly stated ethical violations for each attorney.

Indeed, in light of the serious ethical allegations and constitutional issues involved in such cases, we stress that the district court must make attorney-specific factual findings and legal conclusions before disqualifying attorneys from the USA's office. *See Fullmer v. Harper*, 517 F.2d 20, 22 (10th Cir. 1975) ("[T]he trial court should . . . make specific findings and conclusions [before disqualification], to the end that this court will then have a record before it which will permit a meaningful review, should review be sought."). The record before us does not indicate that the district court made such findings in this case.

## III. Conclusion

For the foregoing reasons, we REVERSE the district court's disqualification order. Appellee's motion to dismiss is denied.