UNITED STATES of America

v.

Pedro VEGA, Ignacia Veras De Los Santos, Agustin Veras De Los Santos, Defendant.

No. CRIM. 03–0040(STT).

District Court, Virgin Islands, D. St. Thomas and St. John.

March 31, 2004.

Darwin K. Carr, St. Croix, VI, for the Defendant Pedro Vega.

David M. Nissman, United States Attorney, By: Ernest Batenga, Assistant U.S. Attorney, St. Croix, VI, James S. Carroll III, Assistant U.S. Attorney, St. Thomas, VI, for the United States.

## OPINION REGARDING DEFENDANT'S MOTION TO DISQUALIFY ASSISTANT UNITED STATES ATTORNEY GOMEZ AND THE ST. THOMAS OFFICE OF THE UNITED STATES ATTORNEY

STANLEY S. BROTMAN, District Judge (Sitting by designation).

Pedro Vega, one of three defendants accused of conspiracy to defraud the United States, document fraud, bribery of public officials and 14 counts of wire fraud,[1] brings this pretrial motion to disqualify Assistant United States Attorney Curtis Gomez and the entire U.S. Attorney's Office in St. Thomas from the prosecution of this case. This motion is based on two "incidents" involving Curtis Gomez, the Assistant United States Attorney prosecuting this case, that occurred at Cyril E. King Airport in St. Thomas on May 17 and July 30 of 2003. In his motion papers, the Defendant has asserted that he was the supervisor on duty at the Department of Homeland Security, Customs and Border Security (DHSCBP) inspection station on both occasions and that he had a personal confrontation with Gomez on at least one occasion. Although Vega has presented the Court with documentary evidence of the events and the testimony of no less than six witnesses (including the Defendant himself), the Court cannot find any credible suggestion that he was actually present on the relevant dates. There appearing no basis for disqualifying AUSA

---

1. Pedro Vega is was first named in the superceding indictment, issued on September 12, 2003, charging him with violations of 18 U.S.C. § 371 (conspiracy), 18 U.S.C. 1343 (wire fraud), 18 U.S.C. § 201 (bribery), and 18 U.S.C. § 1546 (document fraud). In a second superseding indictment, issued on November 6, 2003, the Grand Jury charged Vega with additional violations of 18 U.S.C. § 1512 (obstruction of justice) and 8 U.S.C. § 1324 (harboring aliens).

Gomez or the U.S. Attorneys Office, the Defendant's motion will be denied.

## I

The Defendant's Motion for Disqualification focuses on two allegedly confrontational exchanges between Assistant United States Attorney assigned to prosecute this case and DHSCBP personnel at the Airport. Both "incidents" were apparently the product of a disagreements between Gomez and DHSCBP Inspectors over the proper identification required to pass through the airport check point. On February 6, 2004, the Court heard argument by counsel and the testimony of six witnesses called by the defense and allegedly involved with the incidents.[2]

The first incident, on May 17, 2003 involved only two individuals: AUSA Gomez and Sean Hoover, one of the DHSBP Inspectors on duty at the DHSCBP Preclearance area. Inspector Hoover testified that as Gomez passed through the inspection line on that day he initially produced only the credentials issued to him through the U.S. Attorneys Office. (Hoover Test. at 24.) After Hoover explained that a photo identification including a birthdate (such as a driver's license) was required, Gomez allegedly became "upset." He responded by suggesting that Hoover "must be new" on the job claiming that he is usually allowed to pass through inspection by showing only his AUSA credentials. (Id.) Gomez eventually produced the required identification and passed through the inspection station without further discord.

Although the Defendant's motion papers claim that he was the supervisor on duty, there is absolutely no evidence that he was even present at the Airport on May 17 and Defendant seems to have dropped that contention entirely. Testifying on his own behalf, Vega admits that he was not even

on St. Thomas that day and that his contrary allegation was incorrect. (Vega Test. at 159.) In fact, the record reflects that William Trower was the duty supervisor on duty at the time of the May 17 incident. (Hoover Test. at 26.) Supervisor Trower was notified shortly after it occurred. (Id.) The next day, he created an email report requesting that a formal statement be issued to inspectors regarding the DHSCBP policy with regard to identification required of federal officials. (Def.'s Ex. A.)

The second "incident," on the morning of July 30, 2003, involved a similar exchange of words between a DHSBP Inspector and AUSA Gomez. This time, the inspector on duty was Norman Ramirez–Seda. Inspector Ramirez testified that, on a first request for identification, Gomez simply gestured to the credentials hanging around his neck. (Ramirez Test. at 40–41.) On a second request, Ramirez says, Gomez became "loud" and suggested to those around that Inspector Ramirez was "trying to harass" him. (Id.) Ramirez called over to the supervisor on duty, Lorelle Conner, requesting assistance. (Id. at 43–44.) Conner testified that, when she appeared at the inspection station Gomez told her that he was pleased with the way the inspection had been proceeding and promptly produced his driver's license for verification. (Conner Test. at 54.) After Ramirez had completed his shift, he mentioned the incident to Cleatus Hunt, the afternoon duty supervisor, who advised him to write a memorandum report of the incident. (Ramirez Test. at 45; Hunt Test. at 106; Def's Ex. C.)

The Defendant contends that he was working at the airport during the second incident (July 30, 2003) and that he also had a "confrontation" with Gomez on that date. Although he was not scheduled for

---

**2.** All citations to testimony are to the transcript of the February 6 hearing.

regular duty, Vega testified that he was contacted on July 29 by Hershel Miller, the Assistant Port Director, who asked him to come in the next day for an overtime assignment (not involving duty supervision). (Vega Test. at 155.) On July 30, Vega claims that he passed by the inspection area shortly after Gomez had left, whereupon Inspector Ramirez informed him of the exchange with Gomez. Vega says that he decided to take the matter up with Gomez, who by then was waiting in the gate area of the airport. (*Id.* at p. 156.) Vega allegedly told Gomez that he was going to have Inspector Ramirez write a report of the incident (*Id.* at 156–57), to which Gomez responded "you can have him write whatever you want, but I bet you won't be around to support it." (*Id.* at 157.)

## II

█ The disqualification of Government counsel is a "drastic measure and a court should hesitate to impose it except where necessary." *United States v. Bolden,* 353 F.3d 870, 878 (10th Cir., 2003) (citing *Bullock v. Carver,* 910 F.Supp. 551, 559 (D.Utah 1995)). Accordingly, Courts have allowed disqualification of government counsel only in limited circumstances. *See, e.g., Young v. United States,* 481 U.S. 787, 807, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987) (actual conflict of interest because appointed prosecutor also represented another party); *United States v. Heldt,* 215 U.S.App. D.C. 206, 668 F.2d 1238, 1275 (D.C.Cir.1981) (bona fide allegations of bad faith performance of official duties by government counsel in a civil case); *United States v. Prantil,* 764 F.2d 548, 552–53 (9th Cir.1985) (prosecutor who will act as a witness at trial). "Further, because disqualifying government attorneys implicates separation of powers issues, the generally accepted remedy is to disqualify 'a specific Assistant United States Attorney ..., not all the attorneys in' the office."

*Bolden,* 353 F.3d at 879 (quoting *Crocker v. Durkin,* 159 F.Supp.2d 1258, 1284 (D.Kan.2001)) (citations omitted).

While a prosecutor is not expected to be as guardedly neutral as Judge, the broad discretion afforded also implies a corresponding duty. *See Marshall v. Jerrico,* 446 U.S. 238, 242, 100 S.Ct. 1610, 64 L.Ed.2d 182 (1980) (observing that "the requirement of [judicial] neutrality is jealously guarded by this Court," but that prosecutors need not be as entirely neutral and detached in the adversary system). "A prosecutor has the responsibility of a minister of justice and not simply that of an advocate. This responsibility carries with it specific obligations to see that the defendant is accorded procedural justice and that guilt is decided upon the basis of sufficient evidence." ABA MODEL RULES OF PROF'L CONDUCT 3.8, cmt. 1.

Between the private life of the citizen and the public glare of criminal accusation stands the prosecutor. That state official has the power to employ the full machinery of the state in scrutinizing any given individual. Even if a defendant is ultimately acquitted, forced immersion in criminal investigation and adjudication is a wrenching disruption of everyday life. For this reason, we must have assurance that those who would wield this power will be guided solely by their sense of public responsibility for the attainment of justice.

*Young v. United States ex rel. Vuitton et Fils, S.A.,* 481 U.S. 787, 814, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987).

█ When a defendant raises a credible allegation of a prosecutor's conflict of interest or other relationship that would create the appearance of an improper motivation in the prosecution, the court must undertake a " 'careful balancing' of proper considerations of judicial administration against the United States' right to prose-

cute the matter through counsel of its choice" in order to ensure that the interests of all involved are properly protected. *United States v. Whittaker*, 268 F.3d 185, 194–95 (3d Cir.2001). These interests include the defendant's right to a fair trial free from improper prosecutorial motives, the governments interest in retaining its chosen counsel, and the court's interest in protecting the integrity of the proceedings and maintaining public confidence in the judicial system.

### III

The Defendant's motion for disqualification relies primarily on the requirements of Section 528 of title 28 of the United States Code.[3] Enacted as part of the "Ethics in Government Act of 1978," § 528 directs the Attorney General to promulgate rules which "require the disqualification of any officer or employee of the department of justice" in cases of personal,

financial or political conflict of interest, or the appearance thereof.[4] This mandate has been accomplished through regulations found at 28 C.F.R. § 45. Section 45.2(a), in relevant part, directs that: "no employee shall participate in a criminal investigation or prosecution if he has a personal or political relationship with.... Any person or organization which he knows has a specific and substantial interest that would be directly affected by the outcome of the investigation or prosecution." 28 C.F.R. § 45.2(a). The section further defines a 'personal relationship' as,

> a close and substantial connection of the type normally viewed as likely to induce partiality. An employee is presumed to have a personal relationship with his father, mother, brother, sister, child and spouse. Whether relationships (including friendships) of an employee to other persons or organizations are "personal" must be judged on an individual basis

**3.** Vega also briefly argues that he is the victim of selective prosecution, in violation of the equal protection clause of the U.S. Constitution. However, his vague (and largely unsubstantiated) allegations of animus based on his relationship with nationals of the Dominican Republic is wholly insufficient to substantiate such a claim. To demonstrate selective prosecution, a defendant must show that he or she received disparate treatment and that the prosecution was improperly motivated. *Wayte v. United States*, 470 U.S. 598, 602–03, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985); *see also U.S. v. Bell*, 113 F.3d 1345, 1351 n. 6 (3d Cir.1997) (selective prosecution argument frivolous because defendant did not show any invidious reason for prosecution; defendant argued only that the government wanted to pursue murder charges against her). Disparate treatment occurs when others similarly situated are not prosecuted. Improper motive exists when selection is "deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification." *Wayte*, 470 U.S. at 608, 105 S.Ct. 1524; *United States v. Berrigan*, 482 F.2d 171, 174 (3d Cir.1973). Even before an defendant is entitled to discovery on these elements, he

or she must make a "a credible showing of different treatment of similarly situated persons." *United States v. Armstrong*, 517 U.S. 456, 470, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996); *Berrigan*, 482 F.2d at 174 (defendant must make at least some initial showing that there is some colorable basis for a claim). Nothing even resembling such a showing appears on the record. Therefore, Defendant's motion with regard to a theory of selective prosecution must be dismissed on the pleadings.

**4.** In full, § 528 provides:
"The Attorney General shall promulgate rules and regulations which *require* the disqualification of any officer or employee of the Department of Justice, including a United States attorney or a member of such attorney's staff, from participation in a particular investigation or prosecution if such participation may result in a personal, financial, or political conflict of interest, *or the appearance thereof.* Such rules and regulations may provide that a willful violation of any provision thereof shall result in removal from office."
28 U.S.C. 528 (emphasis added)

with due regard given to the subjective opinion of the employee.

28 C.F.R. § 45.2(c)(2).

Vega argues that recusal is required because the alleged confrontation between himself and AUSA Gomez on July 30th, is a 'personal relationship' of the type that gives rise to a conflict of interest under § 45. *Cf. State of New Jersey v. Imperiale,* 773 F.Supp. 747, 756 (D.N.J.1991) (disqualifying a private prosecutor bringing assault charges against his former supervisor for conflict of interest when prosecutor had a "history of harassing" his supervisor and making threats of violence). The Government responds that such an interpretation is not warranted; that a "personal relationship" as it is referred to within the rule should be understood to mean a close friendship or familial relationship and not simply a personal confrontation (or history of confrontations) with the Defendant. This difficult issue of interpretation is best left for another day since, even assuming the correctness of Defendant's interpretation, § 45 cannot be used to justify disqualification on the facts of this case. The alleged confrontation is supported only by Vega's own self-serving testimony. Although the Defendant's self-interest alone is not reason to discount his testimony, taken in the context of the testimony of eyewitness and other evidence on the record, Vega's story lacks credibility.

The Defendant's testimony is not corroborated by any independent evidence, it is inconsistent with the facts alleged in the motion for disqualification, and it is controverted by his own witnesses. In his motion for disqualification, Defendant alleged that he was the supervisor on duty at the DHSCBP inspection station at the time of both incidents, a statement even he now admits is incorrect. The Defendant also submitted records from three different timekeeping systems utilized by the DHSCBP and relevant to July 30 (Def.'s Ex. E, F, H), none of which would suggest that Vega was working on that date. The report that Vega allegedly asked Inspector Ramirez to write contains no mention of Vega or the alleged confrontation at the airport gate. (Def.'s Ex. C.) Moreover, Ramirez denies having mentioned the incident to Vega or having discussed writing the report. (Ramirez Test. at 46, 50). In fact, neither Inspector Ramirez, Supervisor Conner, nor Supervisor Hunt can remember seeing Vega at work on July 30, and they each testified that they had never witnessed an exchange or confrontation between Pedro Vega and AUSA Gomez. (Ramirez Test. at 50–51; Conner Test. at 62; Hunt Test. at 128.) Hershel Miller, who presumably could have corroborated the claim that Vega had been asked to work overtime on July 30, was not even called as a witness. Given Vega's complete lack of credibility and the absence of any evidence to support his story, the Court cannot find any basis to believe he had any relationship whatsoever with AUSA Gomez, let alone one requiring disqualification.

## IV

Despite Vega's allegations, there is a complete lack of credible evidence to support finding of a personal confrontation between the Defendant and AUSA Gomez. Such as it is, even assuming the correctness of Defendant's interpretation of the relevant regulations, 28 C.F.R. § 45 cannot justify disqualification in this case. The record indicates that although Gomez did indeed pass through DHSCBP check point at the Cyril E. King Airport on May 17 and on July 30, there was no confrontation between the Defendant and the Assistant U.S. Attorney on either date. Because there is a complete lack evidence of any relationship that could create the appearance of personal bias or other improper motive of the Government's chosen

counsel, the Defendant's motion must be denied.

## ORDER REGARDING DEFENDANT'S MOTION TO DISQUALIFY ASSISTANT UNITED STATES ATTORNEY AND THE ST. THOMAS OFFICE OF THE UNITED STATES ATTORNEY

THIS MATTER having come before the Court on Defendant Pedro Vega's pre-trial Motion to Disqualify Assistant U.S. Attorney Curtis Gomez and the entire St. Thomas Office of the United States Attorney from the prosecution of the above captioned case;

THE COURT having heard argument and accepted evidence in a hearing held on February 6, 2004 and having thoroughly considered the submissions of the parties by and through counsel: Darwin Carr, Esq., representing Defendant Pedro Vega and Assistant United States Attorney Ernest Batenga representing the government; and

IT APPEARING that there is no factual basis to support Defendant's motion;

IT IS on this __ 15th_ day of March, 2004; hereby

ORDERED that Defendant's Motion for Disqualification is DENIED with respect to Assistant United States Attorney Curtis Gomez; and it is further

ORDERED that the Defendants Motion for Disqualification is DENIED with respect to the St. Thomas Office of the United States Attorney's Office.