**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 24, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

JUAN SABINO MARQUEZ, JR.,

Defendant – Appellant.

No. 14-3136
(D.C. No. 6:13-CR-10130-MLB-1)
(D. Kansas)

---

**ORDER AND JUDGMENT**[*]

---

Before **PORFILIO**, **ANDERSON**, and **MURPHY**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Defendant and Appellant, Juan Sabino Marquez, Jr., conditionally pled guilty to being a felon in possession of a firearm, in violation of 18 U.S.C.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 32.1.

§ 922(g)(1). He was sentenced to 210 months' imprisonment. Mr. Marquez appeals the denial of his motion to suppress evidence seized from the vehicle he had been driving, as well as the denial of his motion to disqualify the United States Attorney's Office for the District of Kansas from the prosecution of this case. For the following reasons, we affirm the denial of those motions and we affirm Mr. Marquez's conviction.

## BACKGROUND

Shortly after midnight on July 26, 2013, Officers Robert Thatcher and Amanda Stucky of the Wichita Police Department were patrolling in a marked police car on South Santa Fe Street in Wichita, Kansas. Officer Thatcher noticed a white Dodge Dakota pickup truck, and he further observed that he could not read the temporary license tag on the vehicle. When the officers got closer to the pickup, they observed that the tag had expired.

Accordingly, Officer Thatcher initiated a traffic stop by turning on his emergency lights. The officers also turned on the search light on their patrol car so they could see the movements of the truck's occupants.

After the patrol car emergency lights and search light came on, the driver of the pickup truck slowed down and pulled over to the side of the road. Officer Thatcher testified at the hearing on the motion to suppress that, prior to stopping, the pickup truck made a "sudden jerking motion" and moved to the right, which indicated to him that the occupants were trying to hide something. Tr. of Mot. to

Suppress Hr'g at 6; R. Vol. 3 at 17. The officer further testified that he could see that the truck was occupied by two people, a driver (Mr. Marquez) and a passenger, and "as the vehicle pulled over and made this jerking movement, you could see that the driver was messing around in the cab of the vehicle." Id. He stated that, "with the jerking over the wheel, that tells me . . . he's reaching for something or he's trying to hide something." Id. at 7; R. Vol. 3 at 18. Officer Stucky similarly testified that the "abrupt movement" indicated to her that "somebody is concealing something." Id. at 24; R. Vol. 3 at 35.

Once the pickup truck was stopped, the officers exited their patrol car and approached the truck, Officer Thatcher on the driver's side and Officer Stucky on the passenger side. As he approached, Officer Thatcher saw the truck passenger "stuffing an item down along the side of her left leg like in between the cushions of the seat." Id. at 7, R. Vol. 3 at 18.

Once he reached the driver's side door, Officer Thatcher asked the driver/Mr. Marquez for his driver's license and asked if he was on parole or probation. Mr. Marquez stated he was on parole for a firearms violation. The officer testified that he then asked both occupants to get out of the pickup, which they did. Both truck occupants were escorted back to the officers' patrol car, where they were handcuffed and patted down. No weapons or contraband were discovered on either individual.

Upon completion of the pat down, Officer Stucky watched the two truck occupants while Officer Thatcher walked back to the passenger side of the truck, opened the truck door, looked inside, and, according to his testimony, saw the "butt of [a] gun stuffed in between the seat where I saw these movements from the passenger." Id. at 9; R. Vol. 3 at 20. Both truck occupants were then placed under arrest for being felons in possession of a firearm.

Shortly after this case was initiated, Mr. Marquez remembered that in 2003, he had burglarized the home of what turned out to be one of the Assistant United States Attorneys for the District of Kansas, Mr. Brent Anderson. Mr. Marquez's counsel then filed a motion to disqualify Mr. Anderson's entire office (the entire United States Attorneys Office for Kansas). In his motion, Mr. Marquez averred that Mr. Anderson had appeared at his sentencing on the burglary and had asked the state court judge for a much harsher sentence than the state's attorney or Mr. Marquez had sought. A hearing was held on the motion to disqualify, at which the prosecutor indicated that the case had been presented to the grand jury by Special Assistant U.S. Attorney Michelle Jacobs, and that another Assistant U.S. Attorney (Alan Metzger) was prosecuting it. The district court denied the motion.

Mr. Marquez also filed a motion to suppress the evidence (the gun) found in the pickup truck. An evidentiary hearing was held, after which the district court denied the motion. Mr. Marquez subsequently conditionally pled guilty,

preserving his right to appeal the denials of his motion to suppress and his motion to disqualify the U.S. Attorney's Office for Kansas. This appeal followed.

**DISCUSSION**

**I. Denial of Motion to Suppress:**

Mr. Marquez claimed in his motion to suppress the gun that suppression was required because the officers found the firearm during a warrantless search of the vehicle he was driving and the plain view exception to the warrant requirement did not justify the search. The district court conducted a hearing, at which Officers Thatcher and Stucky testified.

Mr. Marquez filed a post-hearing brief, in which he presented several additional arguments for suppression of the firearm: (1) "Officer Thatcher . . . did not express a concern about officer safety, but decided to search the vehicle based on his hunch that the vehicle contained some type of contraband." Def.'s Reply to Resp. to Mot. to Suppress at 2; R. Vol. 1 at 32; (2) "[t]he officers' belief that the automobile contained a weapon or that the suspects were dangerous was not rational," id. at 3; R. Vol. 1 at 33; and (3) "[t]he officers had a hunch and nothing more to search this vehicle." Id. at 4; R. Vol. 1 at 34.

The district court denied the motion, citing the United States Supreme Court's decision in Michigan v. Long, 463 U.S. 1032 (1983), and concluding that the search was justified because the facts and circumstances surrounding the stop gave rise to a reasonable suspicion that Mr. Marquez was dangerous and could

-5-

gain control of a weapon.  The district court began by stating that "the undisputed facts show that the traffic stop was justified."  Memorandum & Order at 3; R. Vol. 1 at 38.  The court also determined that the "subsequent pat down search was also lawful," and so "the only issue in this case is whether the search of the passenger compartment of the vehicle was lawful."  Id.

In addressing that question, the court quoted from Long:

A police officer may . . . conduct a limited search for weapons if he "possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officer[s] in believing that the suspect is dangerous and the suspect may gain immediate control of weapons."

Id. (quoting Long, 463 U.S. at 1049 (quoting Terry v. Ohio, 392 U.S. 1, 21 (1968))).  The court then rejected Mr. Marquez's argument that Officer Thatcher's testimony did not demonstrate any concern for his safety, stating that our court "'has reasoned that the test of officer safety is objective rather than subjective, and therefore the officer need not personally be in fear.'"  Id. at 4; R. Vol. 1 at 39 (quoting United States v. Dennison, 410 F.3d 1203, 1213 (10th Cir. 2005)).

The district court next discussed our decision in United States v. Palmer, 360 F.3d 1243 (10th Cir. 2004), a case involving a stop similar to the instant stop. As the district court noted, the defendant in Palmer:

was observed reaching behind the seat and making movements in the vehicle as the officer approached.  The defendant also did not immediately stop for the police, and the Circuit reasoned that this

-6-

fact supported the officer's opinion that the defendant was attempting to hide an object. After the vehicle stopped, the officer learned that the defendant had a criminal record of being armed. The officer removed the defendant from the vehicle and proceeded to search the vehicle, ultimately locating a handgun in a locked box. The Circuit held that the observations of the defendant trying to hide something, coupled with his history of being an armed felon was sufficient to support a "reasonable suspicion that Defendant was dangerous and was hiding a weapon in the glove box."

Id. at 4-5; R. Vol. 1 at 39-40 (quoting Palmer, 360 F.3d at 1246). The district court then concluded that the facts in the instant case, including that "the stop occurred after midnight and in a high crime area," justified the conclusion that "'the specific facts and circumstances here gave rise to a reasonable suspicion that [Marquez] was dangerous and could gain control of a weapon.'" Id. at 5; R. Vol. 1 at 40 (quoting Palmer, 360 F.3d at 1246).

Finally, the district court concluded that the Supreme Court's decision in Long was not disturbed by its subsequent decision in Arizona v. Gant, 556 U.S. 332 (2009), citing our decision in United States v. Chambers, 383 Fed. Appx. 719, 720-21 (10th Cir. 2010) (citing Gant, 556 U.S. at 346 (distinguishing Long)); Gant, 556 U.S. at 352 (Scalia, J. concurring) (clarifying that the holding of Long is undisturbed by Gant).

"In reviewing the denial of a motion to suppress, we review the district court's findings of fact for clear error, considering the evidence in the light most favorable to the government." United States v. Salas, 756 F.3d 1196, 1200 (10th Cir. 2014); United States v. Fox, 600 F.3d 1253, 1257 (10th Cir. 2010). "We

-7-

review the district court's ultimate determination of reasonableness under the Fourth Amendment de novo." Salas, 756 F.3d at 1200.

Mr. Marquez concedes that there is no dispute as to the legality of the initial stop, and that "asking the occupants to exit the vehicle, handcuffing them, and patting them down was lawful." Appellant's Br. at 8. He further concedes that the only issue remaining is "whether the search of the passenger compartment of the vehicle was lawful." Id. Mr. Marquez fails, however, to convince us that the district court's analysis and conclusion are wrong. Indeed, we agree completely with the district court's citations and discussion of the relevant legal authorities. We accordingly affirm its decision, for substantially the reasons stated in that decision, as largely explained above.

**II. Denial of Motion to Disqualify:**

Mr. Marquez's remaining argument is that the district court erred in denying his motion to disqualify the entire U.S. Attorney's Office for Kansas because he had previously burglarized the home of one of the Assistant U.S. Attorneys for Kansas, and that attorney had sought a stiff sentence for Mr. Marquez for the burglary.

"We review attorney disqualification orders under a bifurcated standard of review. First, we review the district court's factual conclusions under a clear error standard. Second, we review the district court's legal interpretation of particular ethical norms under a de novo standard when that interpretation

implicates important constitutional rights." United States v. Bolden, 353 F.3d 870, 878 (10th Cir. 2003) (citing United States v. Collins, 920 F.2d 619, 628 (10th Cir. 1990)).

Mr. Marquez argues that he "was precluded from meaningful plea negotiations which subjected him to a much longer prison term due to the conflict of interest that was created from his previous victimization of a member of the staff of the United States Attorney for the District of Kansas and its impact on his office in the handling of his case." Appellant's Br. at 13-14. More particularly, Mr. Marquez claims he was denied the opportunity to plead guilty to a charge of possession of a stolen firearm, in violation of 18 U.S.C. § 922(j), instead of pleading, as he in fact did, to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Because he pled guilty to the § 922(g)(1) felon-in-possession charge, he was subject to a mandatory fifteen-year prison term under 18 U.S.C. § 924(e). A guilty plea to a § 922(j) charge, by contrast, would not have subjected him to the fifteen-year mandatory minimum. As the government argues, Mr. Marquez's argument fails for a number of reasons.

First, as we have stated, "[t]he disqualification of Government counsel is a drastic measure and a court should hesitate to impose it except where necessary." Bolden,, 353 F.3d at 878 (further quotations omitted). "Courts have allowed disqualification of government counsel in limited circumstances" such as an "actual conflict of interest because [the] appointed prosecutor also represented

another party" or where there are "bona fide allegations of bad faith performance of official duties by government counsel" or where the "prosecutor . . . will act as a witness at trial." Id. at 878-79 (citing Young v. United States, 481 U.S. 787, 807 (1987); United States v. Heldt, 668 F.2d 1238, 1275 (D.C. Cir. 1981); United States v. Prantil, 764 F.2d 548, 552-53 (9th Cir. 1985)). Accordingly, "because disqualifying government attorneys implicates separation of powers issues, the generally accepted remedy is to disqualify a specific Assistant United States Attorney, . . . not all the attorneys in the office." Id. at 879 (further quotation omitted). Indeed, "because disqualifying an entire United States Attorney's office is almost always reversible error regardless of the underlying merits of the case, a reviewing court will rarely have to delve into the underlying claim to conclude that the disqualification was unwarranted." Id. at 876.

Thus, there are multiple reasons why the district court correctly denied Mr. Marquez's motion to disqualify the entire office. First, the Assistant U.S. Attorney whose house Mr. Marquez burglarized was not involved in Mr. Marquez's prosecution. Second, under Bolden, it would have been reversible error to disqualify the entire office because the government took the proper course of action in prohibiting the burglarized attorney from participating in Mr. Marquez's prosecution. Third, Mr. Marquez has shown no prejudice stemming from the denial. While Mr. Marquez argues he was precluded from pleading to a more desirable charge, he has conceded that he was not offered that more

favorable plea bargain because the office had a policy to not offer pleas to stolen firearms charges in lieu of convictions for being a felon-in-possession.  <u>See</u> Tr. of Mot. to Disqualify Hr'g at 4-5; R. Vol. 3 at 7-8 (defense counsel noting office policy regarding plea bargains).  Mr. Marquez has failed to show that the district erred in denying his motion to disqualify.

## CONCLUSION

For the foregoing reasons, we AFFIRM the denial of Mr. Marquez's motions and AFFIRM his conviction.

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge

-11-